UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JIMMIE HARRISON                                    CIVIL ACTION

VERSUS                                             NO. 12-0771

N. BURL CAIN, WARDEN                               SECTION "G"(5)


## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. §2254(e)(2). Accordingly;

IT IS HEREBY RECOMMENDED that the instant petition be **DENIED WITH PREJUDICE.**

## I. PROCEDURAL HISTORY[1]

Petitioner, Jimmie Harrison, is a state prisoner currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana. On March 26, 2004, Harrison was charged by bill of

---

[1]Portions of the procedural history are taken from the Louisiana First Circuit Court of Appeal's opinion, State v. Harrison, 2007 WL 866247, No. 2006-KA-1823 (La. App. 1 Cir. 3/23/07).

information with simple escape (count 1), a violation of La. R.S. 14:110, and possession of a Schedule II controlled dangerous substance namely cocaine (count 2), a violation of La. R.S. 40:967(C). (St. Rec. Vol. 1, p. 31). On April 7, 2004, Harrison proceeded to trial before a jury in the Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana. On that same date, Harrison was found guilty as charged on both counts. (St. Rec. Vol. 1, pp. 112-175; St. Rec. Vol. 2, pp. 176-271). On August 31, 2004, the district court, having determined that Harrison was a fourth felony offender, sentenced him to five years imprisonment in connection with his possession of cocaine conviction and to life imprisonment in connection with his simple escape conviction, to run consecutively . (St. Rec. Vol. 2, pp. 301-302).[2] On November 9, 2005, the Louisiana First Circuit Court of Appeal vacated Harrison's sentences due to the trial court's failure to rule on Harrison's motion for post-verdict judgment of acquittal. <u>State v. Harrison</u>, 913 So.2d 897 (Table), 2004-KA-2786 (La. App. 1 Cir. 11/9/05) (St. Rec. Vol. 2, pp. 322-324). On May 11, 2006, the district court once again found Harrison to be a fourth felony offender and sentenced him to life imprisonment. (St. Rec. Vol. 2, p. 328). On March 23, 2007, the Louisiana First

---

[2]Harrison's simple escape conviction was used as the basis for his fourth felony offender adjudication.

Circuit affirmed Harrison's convictions, denying Harrison's sole claim that there was insufficient evidence to support his possession of cocaine conviction. State v. Harrison, 2007 WL 866247, *2-*3, 2006-KA-1823 (La. App. 1 Cir. 3/23/07) (St. Rec. Vol. 3). The court, however, found errors with respect to the state district court's sentencing of Harrison. First, the Louisiana First Circuit found that the trial court failed to vacate Harrison's original simple escape sentence before resentencing Harrison as a multiple offender. Second, the appellate court found that the trial court improperly designated Harrison's sentence as being without benefit of parole. The state appellate court made the appropriate amendments to Harrison's sentence and remanded the matter for the trial court to amend the minute entry for sentencing and, if necessary, to amend the commitment order. Id. at *3-*4. On November 16, 2007, the Louisiana Supreme Court denied Harrison's writ application without opinion. State v. Harrison, 967 So.2d 522, 2007-KO-1025 (La. 2007) (St. Rec. Vol. 3 and Supp. Vol. 1).

On November 5, 2008, Harrison filed a post-conviction application with the state district court. (St. rec., vol. 3). On August 4, 2010, the district court denied Harrison post-conviction relief. (St. Rec. Vol. 3). Petitioner's effort in this regard ended on December 16, 2011, when the Louisiana Supreme Court denied

his writ application.  <u>State ex rel. Harrison v. State</u>, 76 So.3d 1196, 2011-KH-0185 (La. 2011) (St. Rec. Vol. 4).

On March 19, 2011, Harrison filed the instant federal habeas corpus action, raising the following claims: 1) the evidence was insufficient to support his possession of cocaine conviction; 2) police performed an illegal search and seizure; 3)he was tried before a biased and partial jury; and, 4) he received ineffective assistance of counsel. (Rec. Doc. No. 1). The State concedes that the instant action is timely and that Harrison has exhausted his state court remedies. (Rec. Doc. No. 12, pp. 4-5).

## II. <u>FACTS</u>

In November 2003, the defendant was enrolled in the "8 to 4 Program," which is a type of work release for misdemeanor offenders sentenced to "parish jail time." For several weeks, the defendant failed to show up for work. As a result, an arrest warrant for his escape was issued.

On February 10, 2004, while on duty, Deputy Jeremy Church with the St. Tammany Parish Sheriff's Office saw the defendant in the yard of the defendant's mother's house. Deputy Church contacted Deputy Lee Hardy, Jr., also with the St. Tammany Parish Sheriff's Office. By the time Deputy Hardy arrived at the scene, the defendant had gone around the corner of his mother's house. Deputy Church secured the backyard, while Deputy Hardy approached the

front of the house.  When Deputy Hardy knocked on the glass storm door, Elizabeth Harrison, the defendant's mother, motioned for Deputy Hardy to enter.  Deputy Hardy entered the house, and asked Ms. Harrison if the defendant was still there.  She motioned toward the back room.  As Deputy Hardy turned, he saw the defendant coming out of one of the back rooms.  He advised the defendant that he was under arrest.  The defendant denied that he was Jimmie Harrison, but his mother verified that he was Jimmie Harrison, her son.

Deputy Hardy arrested and <u>Mirandized</u> the defendant.  Deputy Hardy searched the defendant's person and found what appeared to be a crack pipe in his left front pocket.  One end of the pipe was wrapped with tape, and the other end had burnt material in it.  The defendant was placed in the back of Deputy Church's unit. Suspecting there could be additional drugs in the house, Deputy Hardy obtained written consent from Ms. Harrison to search the area the defendant had been in.[3]  The only people in the house at that

---

[3]Ms. Harrison's written statement to the police, which was written by Ms. Harrison's daughter, stated:

I Elizabeth C. Harrison identified my son Jimmie Harrison is my son (sic) and he does not live at 72366 Rose St. he only spent the night here.... I have nothing to do with what (sic) going on. And I don't know what he did are (sic) doing because he don't live here. he only comes here to eat and bath (sic). Jimmie was at my house 2-9-04 in and out. yes I give my permission for the police to go into and cerch (sic) the room.

time were the defendant (prior to being arrested), Ms. Harrison, and a young child about two years old. Deputy Hardy searched the room that, according to Ms. Harrison, the defendant had slept in the night before. Deputy Hardy found several crack pipes under the mattress and some pieces of crack cocaine underneath the bed. He also found a razor blade, a mirror, corner bags, and filter material. Ms. Harrison did not indicate that anyone else stayed in that room where the drugs were found and where the defendant had slept the night before.[4]

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in state court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "contrary to, or involved an

_____

[4]The above factual recitation was taken from the Louisiana First Circuit Court of Appeal's opinion, <u>Harrison</u>, 2007 WL 866247 at *1.

unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 1056 (2000); <u>Hill</u>, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Hill</u>, 210 F.3d at 485 (quoting 28 U.S.C.§2254(d)(2)).

## III. <u>ANALYSIS</u>

### A. **Evidence Was Insufficient to Support Possession of Cocaine Conviction**

Harrison argues that the State failed to submit sufficient evidence to support his drug possession conviction. Specifically, Harrison provides that the State failed to prove that he had constructive possession of the drugs.

Harrison raised this same issue on appeal which the Louisiana First Circuit Court of Appeal rejected. The state appellate court began its analysis by reviewing applicable Supreme Court law along with corresponding state law.

> A conviction based on insufficient evidence cannot stand as it violates due process. <u>See</u> U.S. Const. amend. XIV; La. Const. art. I, §2. In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). <u>See</u> <u>also</u> La.C.Cr.P. art. 821(B); <u>State v. Mussall</u>, 523 So.2d 1305, 1308-1309 (La.1988). The <u>Jackson</u> standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. <u>State v. Patorno</u>, 2001-2585, p. 5 (La.App. 1st Cir.6/21/02), 822 So.2d 141, 144.
>
> The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. <u>State v. Taylor</u>, 97-2261, pp. 5-6 (La.App. 1st Cir.9/25/98), 721 So.2d 929, 932.

<u>Harrison</u>, 2007 WL 866247 at *2.

Next, the Louisiana First Circuit examined what the State was required to show to support a conviction on the charge of possession of cocaine.

> To support a conviction of possession of a controlled dangerous substance, the State must prove that the defendant was in possession of the illegal drug and that he knowingly or intentionally possessed the drug. Guilty knowledge therefore is an essential element of the crime of possession. A determination of whether or not there is "possession" sufficient to convict depends on the peculiar facts of each case. To be guilty of the crime of possession of a controlled dangerous substance, one need not physically possess the substance; constructive possession is sufficient. In order to establish constructive possession of the substance, the State must prove that the defendant had dominion and control over the contraband. A variety of factors are considered in determining whether or not a defendant exercised "dominion and control" over a drug, including: a defendant's knowledge that illegal drugs are in the area; the defendant's relationship with any person found to be in actual possession of the substance; the defendant's access to the area where the drugs were found; evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the particular area was frequented by drug users. <u>State v. Harris</u>, 94-0696, pp. 3-4 (La.App. 1st Cir.6/23/95), 657 So.2d 1072, 1074-1075, <u>writ</u> <u>denied</u>, 95-2046 (La.11/13/95), 662 So.2d 477.

<u>Id</u>.

With the above burden of proof in mind, the court examined the evidence presented at trial.

> In this case, the jury was presented with two theories of who possessed the cocaine found by Deputy Hardy: the State's theory that defendant constructively possessed the cocaine that was found in the bedroom where he slept, and the defendant's theory that the cocaine

belonged to someone else.[5]  The jurors obviously
concluded that the version of the events suggested by the
defense was a fabrication designed to deflect blame from
the defendant.  When a case involves circumstantial
evidence and the jury reasonably rejects the hypothesis
of innocence presented by the defense, that hypothesis
falls, and the defendant is guilty unless there is
another hypothesis which raises a reasonable doubt.
State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ
denied, 514 So.2d 126 (La.1987).

Id. at *3.


The Louisiana First Circuit then concluded:


The jury's verdict reflected the reasonable
conclusion that the defendant, having dominion and
control over the area where the cocaine was found,
constructively possessed the cocaine.  Through
physical evidence and testimony, the State
established that cocaine and drug paraphernalia
were found in the bedroom of the defendant's
mother's house where the defendant had recently
slept.  The defendant did not testify and presented
no rebuttal testimony.  ...

After a thorough review of the record, we find
that the evidence supports the jury's verdict of
guilty.  We are convinced that viewing the evidence
in the light most favorable to the State, any
rational trier of fact could have found beyond a
reasonable doubt, and to the exclusion of every
reasonable hypothesis of innocence, that the
defendant was guilty of possession of cocaine.

---

[5]The defendant did not testify, and no witnesses for the defense
testified.  The defendant's theory is gleaned from counsel's
closing argument wherein he suggests that the several crack pipes
found may have indicated that there was a party in that room at
some point, since the defendant would not need more than one crack
pipe. He further points out that no fingerprints were taken on the
crack pipes, and there was no investigation to determine who else
may have been coming in and out of the house or the room.

<u>Id</u>.

The Court finds that the above analysis does not represent an unreasonable application of Supreme Court law, as enunciated in <u>Jackson</u>, to the facts of this case. Accordingly, the instant claim for federal habeas corpus relief is without merit.

**B. Illegal Search and Seizure**

While Harrison does not contest that the search of his person was legal, he states that the warrantless search of his bedroom was illegal, in violation of the Fourth Amendment. (Rec. Doc. No. 1, p. 10). This Court need not address the merits of the above argument due to the mandate enunciated in <u>Stone v. Powell</u>, 428 U.S. 465 (1976). In <u>Stone</u>, the United States Supreme Court concluded:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

<u>Id</u>. at 481-482 (footnote omitted).

In the present matter, Harrison does not contend that he was deprived of the opportunity to litigate his Fourth Amendment claim fully and fairly in the state court system. As evidenced by the state district court's analysis, set forth in its August 14, 2010

Order (St. Rec. Vol. 3), Harrison's illegal search and seizure

claim was properly considered and ultimately rejected.

> In Claim One, Petitioner argues his trial counsel
> rendered ineffective assistance by failing to object to
> [the] use of evidence obtained from [a] search and
> seizure [which] Petitioner contends was illegal.
>
> When Petitioner was arrested at his mother's home,
> officers found a crack pipe on his person. With the
> discovery of the pipe, officers reasonably suspected that
> Petitioner might have stored drugs on the premises, and
> they conducted a warrantless search of his room with his
> mother's written permission.
>
> Valid and freely-given consent is a long-standing
> exception to the rule that a warrant is required for
> search. State v. Edwards, 434 So.2d 395, 397 (La. 1983).
> Consent to a warrantless search by one who possesses
> common authority over the premises is valid. U.S. v.
> Matlock, 94 S.Ct. 988, 993 (1974).
>
> Common authority rests not on ownership of the
> property in question, but rather upon "mutual use of the
> property by persons generally having joint access or
> control for most purposes, so that it is reasonable to
> recognize that any of the co-inhabitants has the right to
> permit the inspection in his own right and that the
> others have assumed the risk that one of their number
> might permit the common area to be searched." Id. at
> n.7.
>
> Petitioner contends that he was an overnight guest
> at his mother's house and, as such, that he had a
> reasonable expectation of privacy. An overnight guest
> does have a reasonable expectation of privacy sufficient
> to render unconstitutional a warrantless search of the
> room in which he stayed. Minnesota v. Olson, 110 S.Ct.
> 1684 (1990). However, Petitioner's privacy rights do not
> negate his mother's ability to consent to a search of the
> room in which he had been staying.

(St. Rec. Vol. 3).

Thus, Harrison's Fourth Amendment claim is not properly before

this Court because the requirements set forth in Stone have been

met through state court proceedings.  Accordingly, Harrison's claim for habeas corpus relief is without merit.

### C.  Biased and Partial Jury

Harrison argues that he was not provided with an impartial jury because the jury pool had favorable views regarding the truthfulness of law enforcement officials and the State's case against him was solely based upon the testimony of three St. Tammany Parish sheriff deputies.

Under federal law, a criminal defendant has a right to an impartial jury pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.  The right to an impartial jury is applicable to the States through the Fourteenth Amendment. See Morgan v. Illinois, 504 U.S. 719, 726 (1992).  Even though the Constitution requires an impartial jury, the Supreme Court has not dictated bright-line rules for the adequacy of the voir dire. Absent allegations of racial or ethnic bias or a capital punishment issue, the Supreme Court consistently has held that trial judges in criminal matters are afforded substantial discretion in determining whether a juror is fit to make an unbiased determination.  See Risatano v. Ross, 424 U.S. 589, 595 (1976); and Mu'min v. Virginia, 500 U.S. 415, 422 (1991).  Trial judges are afforded such discretion because "'the determination of impartiality, in which demeanor plays such an important part, is particularly in the province of the trial judge.'" Risatano, 424 U.S. at 594 (quoting

<u>Rideau v. Louisiana</u>, 373 U.S. 723, 733 (1963)).  Furthermore, jury selection is a factual determination made by the trial judge, and therefore is subject to a presumption of correctness during federal habeas review.  <u>See</u> <u>Wainwright v. Witt</u>, 469 U.S. 412, 428 (1985); and 28 U.S.C. §2254(e)(1).

In the instant matter, a review of the voir dire transcript reflects that the prosecutor asked voir dire members to rate, on a scale of one to ten, how likely they thought it was for a law enforcement official to offer truthful testimony, with ten being very likely and one being very unlikely.  (St. Rec. Vol. 1, p. 157).  The voir dire members' responses ranged from five to ten.  (St. Rec. Vol. 1, pp. 159-161).  The range for those members picked to serve on the jury was from eight to nine.  (St. Rec. Vol. 2, p. 197).

There are three categories of disqualifying jury bias.  Actual bias exists when a juror fails to answer a material question honestly on voir dire and a correct response would have provided a valid basis for a challenge for cause.  <u>Hatten v. Quarterman</u>, 570 F.3d 595, 600 (5th Cir. 2009), <u>cert</u>. <u>denied</u>, 130 S.Ct. 1283 (2010) (citations omitted).  Alleged bias is ordinarily addressed in a hearing where the judge examines the juror and obtains assurances of the juror's impartiality.  <u>Id</u>. (citations omitted).  Implied bias arises in a narrow category of cases in which a juror can be presumed biased.  <u>Id</u>.  (citation omitted).

Harrison alleges no facts suggesting that any juror's bias falls within the actual or alleged bias categories. Instead, Harrison claims that jurors' voir dire answers themselves, specifically their law enforcement credibility rankings, establish the jury's implied bias.

This court's research has uncovered no case where a juror bias claim has been raised, much less approved, based upon nothing more than jurors' favorable views of law enforcement officials.[6] A defendant is not entitled to jurors who come ready to serve with a "blank slate," without any preconceived notions or opinions. Virgil v. Dretke, 446 F.3d 598, 609 (5th Cir. 2006). To require such jurors "would be to establish an impossible standard...." Irvin v. Dowd, 366 U.S. 717, 723 (1961); see also Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) ("[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one.")

---

[6]Indeed, family ties between law enforcement officials and jurors, absent a juror's express doubt over his or her ability to be impartial, are generally insufficient to show jury bias. See United States v. Morales, 185 F.3d 74, 84 (2nd Cir. 1999), cert. denied, 529 U.S. 1010 (2000) (jurors' connections to law enforcement officials, "standing alone," are insufficient to establish implied bias even in case where defendants are charged with attempted murders of police officers) (quotation omitted) (citing United States v. Brown, 644 F.2d 101, 105 (2nd Cir.), cert. denied, 454 U.S. 881 (1981) ("A defendant must raise a contention of bias from the realm of speculation to the realm of fact"); United States v. West, 458 F.3d, 1, 9 (D.C. Cir. 2006)("'absent a specific showing of bias, [even] a defendant accused of murdering a police officer is not entitled to a jury free of policemen's relatives'")(quoting United States v. Caldwell, 543 F.2d 1333, 1347 (D.C. Cir. 1975)).

15

Harrison has presented no specific showing of bias on the part of any juror. A review of the transcript reflects that no juror expressed any doubt about his or her ability to judge Harrison fairly and impartially. Harrison was not denied a fair trial simply because jurors had preconceived notions regarding the credibility of law enforcement officials. Harrison's claim for habeas corpus relief is without merit.

## D. Ineffective Assistance of Counsel

Harrison alleges that his trial counsel was ineffective in the following respects: 1) counsel failed to properly challenge the warrantless search of his bedroom; 2) counsel failed to challenge biased prospective jurors; 3) counsel wasted peremptory challenges; and, 4) counsel failed to investigate his case.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective

assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. <u>Strickland</u>, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this Court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. <u>Kimler</u>, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under <u>Strickland</u>, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d

17

586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).
In assessing counsel's performance, a federal habeas court must
make every effort to eliminate the distorting effects of hindsight,
to reconstruct the circumstances of counsel's challenged conduct,
and to evaluate the conduct from counsel's perspective at the time
of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d
230, 236-37 (5th Cir. 2002), cert. denied, 537 U.S. 1104 (2003);
Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert.
denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently
clarified that, under Strickland, "[t]he question is whether an
attorney's representation amounted to incompetence under prevailing
professional norms, not whether it deviated from best practices or
most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct.
770, 788 (2011) (quotation omitted). The Harrington Court went on
to recognize the high level of deference owed to a state court's
findings under Strickland in light of the AEDPA:

> The standards created by Strickland and §2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so. The Strickland standard is
> a general one, so the range of reasonable applications is
> substantial. Federal habeas courts must guard against
> the danger of equating unreasonableness under Strickland
> with unreasonableness under §2254(d). When §2254(d)
> applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any
> reasonable argument that counsel satisfied Strickland's
> deferential standard.

<u>Id</u>.  (quotations and citations omitted).

"[A] court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  <u>Bell v. Cone</u>, 535 U.S. 685, 697 (2002) (citing <u>Strickland</u>, 466 U.S. at 689).  This Court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  <u>Strickland</u>, 466 U.S. at 689; <u>Moore</u>, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  <u>Id</u>.

1) <u>Failure to Challenge Warrantless Search and Seizure</u>

Harrison argues that counsel was ineffective because counsel failed to "properly" challenge the illegal warrantless search of his bedroom. Harrison states: "Had counsel properly challenged the illegal warrantless search and seizure . . . he would more likely than not have been successful at the motion to suppress hearing . . . in having the evidence of the illegal warrantless search and seizure suppressed at [his] trial." (Rec. Doc. No. 1, p. 25).

In addressing this issue on post-conviction, the trial court noted that when deputies arrested Harrison they found a crack pipe in his possession. Thereafter, deputies received written permission from Harrison's mother to search his room.[7]

A valid consent is a recognized exception to the rule that a warrant be obtained before conducting a search. <u>Soldal v. Cook County, Ill.</u>, 506 U.S. 56, 65-66 (1992). A valid consent may be obtained from a party possessing "common authority over or other sufficient relationship to the premises or effects sought to be inspected." <u>United States v. Matlock</u>, 415 U.S. 164, 171 (1974) (footnote omitted). Even consent provided by one who reasonably appears to have authority over the premises will validate a

---

[7]That Harrison's mother gave officials written permission to search Harrison's room is also noted by the Louisiana First Circuit Court of Appeal in its recitation of the facts. <u>Harrison</u>, 2007 WL 866247 at *1.

warrantless search.  <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 188-89 (1990).

Clearly, Harrison's mother reasonably appeared to have authority over the premises, specifically, the room which Harrison occupied.  In fact, as provided in her written statement, Ms. Harrison specifically granted permission to search that particular room.  <u>Harrison</u>, 2007 WL 866247 at *1 n.2.

Based upon the above, the Court finds that the state courts' rejection of Harrison's claim that the warrantless search of his room was illegal and counsel was ineffective for failing to "properly" challenge the search, was not contrary to Supreme Court law.  Petitioner was not prejudiced by counsel's alleged deficiency because there was no proper basis to challenge the legality of the search.

2) <u>Failure to Challenge Biased Prospective Jurors</u>

Harrison claims that counsel was ineffective in failing to challenge prospective jurors on the basis of their belief that testimony from law enforcement officials is generally truthful. Such a basis, however, is clearly insufficient to support a challenge.[8]  Thus, Harrison has failed to meet either prong of <u>Strickland's</u> test.  The state courts' rejection of the instant claim was not contrary to Supreme Court law.

---

[8]<u>See</u> <u>supra</u> at pp. 13-16.

3.  <u>Wasted Peremptory Challenges</u>

Harrison argues that counsel wasted peremptory challenges due to his failure to strike for cause the biased jurors based upon their relatively high rankings as to the truthfulness of officials for cause.  Again, however, there was no basis to strike these jurors for cause.  As such, counsel was not deficient.

Harrison also claims that counsel was ineffective in using a peremptory challenge to strike venire member Elizabeth Stevens rather than having the trial court strike her for cause.[9]  Harrison asserts that Stevens, under state law, was ineligible to serve as a juror because she had not resided in St. Tammany Parish, where the trial took place, for at least one year.[10]  As such, counsel should have had Stevens struck for cause, thereby saving one of his six peremptory challenges.

The loss of a peremptory challenge does not constitute a <u>per se</u> violation of one's right to an impartial jury.  <u>Ross v. Oklahoma</u>, 487 U.S. 81, 88 (1988).  As the Supreme Court explained:

---

[9]The voir dire transcript reflects that defense counsel used his first peremptory challenge to strike Stevens.  St. Rec. Vol. 2 of 6, p. 191.

[10]Stevens stated that she had lived in Mandeville, a city in St. Tammany Parish, for "almost nine months."  (St. Rec. Vol. 1 of 6, p. 119).  La. C.Cr.P. art. 401(A)(1) requires that a citizen reside "within the parish in which he is to serve as a juror for at least one year immediately preceding his jury service."

> [P]eremptory challenges are not of constitutional
> dimension. They are a means to achieve the end of an
> impartial jury. So long as the jury that sits is
> impartial, the fact that the defendant had to use a
> peremptory challenge to achieve that result does not mean
> the Sixth Amendment was violated.

Id. (citations omitted).

Harrison has provided no evidence to support a finding that he was denied an impartial jury because he lost a peremptory challenge. Thus, Harrison was not prejudiced by counsel's error. The state courts' rejection of the instant claim was not contrary to Supreme Court law.

4. Failure to Investigate

Harrison contends that if not for counsel's failure to investigate, evidence would have been uncovered exonerating him. Said evidence would have refuted the testimony and evidence admitted at trial and would have proven his innocence.

As noted above, petitioner was enrolled in the St. Tammany Parish "8 to 4 Program." As explained by St. Tammany Parish Sheriff Deputy Tammie Bushnell and reiterated by Harrison, the 8 to 4 program is designed for misdemeanor offenders sentenced to parish jail time. Under the program, the prisoners perform work from 8 to 4, then they return home, having their nights and weekends free. (St. Rec. Vol. 2 of 6, p. 219; Rec. Doc. No. 1, p. 30). Deputy Bushnell testified that time cards are created for each participating inmate to keep track of their work hours. Based upon

23

the information associated with Harrison's time card, which was introduced into evidence as State's Exhibit Number 2, Bushnell stated that Harrison enrolled in the program on November 17, 2003, and worked for a total of three days, the 17th, 18th, and 21st. Thereafter, he failed to appear for work. As a result, on January 21, 2004, an arrest warrant was issued charging Harrison with simple escape. (St. Rec. Vol. 2 of 6, pp. 222-23).

Harrison contends that his work time was recorded on a "Worksheet" and counsel failed to seek a copy of the "Worksheet." According to Harrison, "[h]ad this Worksheet been entered into evidence at trial [he] would have been exonerated." (Rec. Doc. No. 1, p. 31). Harrison states that the Worksheet, in contrast to the time card, would have shown that he did report for work and that is the reason Deputy Bushnell waited until January 21, 2004, to seek his arrest on the charge of simple escape. Harrison argues that if counsel had invested even a minimal amount of time investigating his case, counsel would have uncovered this evidence reflecting his "active" participation in the 8 to 4 program. (Rec. Doc. No. 1, p. 31).

Harrison provides not a shred of evidence supporting his claim that but for counsel's failure to adequately investigate, documentation would have been uncovered refuting Deputy Bushnell's trial testimony and petitioner's time card (State's exhibit number 2), thereby exonerating him. Harrison's unsubstantiated claim is

24

clearly insufficient to support his burden of proof. If a petitioner could attain habeas relief based upon the mere allegation that, but for counsel's failure to investigate, evidence would have been uncovered which would have proven his or her innocence, the prison doors would open wide and there would be a mass exodus. Such is not the case.

Accordingly;

**RECOMMENDATION**

It is hereby recommended that the application for federal habeas corpus relief filed by petitioner, Jimmie Harrison, should be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en</u>

banc).[11]

New Orleans, Louisiana, this _17th_ day of _December_, 2012.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[11]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.